No. 64,428

AUGUSTINE GONZALES, AS ADMINISTRATOR OF THE ESTATE OF
RODERICK E. GONZALES, DECEASED, and AUGUSTINE GON-
ZALES and DOLORES GONZALES, *Appellants,* v. THE BOARD OF
COUNTY COMMISSIONERS OF SHAWNEE COUNTY, KANSAS,
*Appellee.*

(799 P.2d 491)

Opinion filed October 26, 1990.

*Kevin M. Fowler*, of Frieden, Haynes & Forbes, of Topeka, argued the cause, and *Randall J. Forbes*, of the same firm, was with him on the brief for appellants.

*Douglas F. Martin*, county counselor, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This summary judgment case is before us as an interlocutory appeal on transfer from the Court of Appeals.

At issue is whether K.S.A. 75-6104(o), a subsection of the Kansas Tort Claims Act, insulates Shawnee County from liability for negligent injury to a person who paid an admission fee to use an enclosed swimming beach and drowned.

A survival and wrongful death action has been filed by the administrator of the estate and by the parents of Roderick E. Gonzales, deceased, against the Board of County Commissioners of Shawnee County, Kansas. The claims are based on ordinary (simple) as well as gross and wanton negligence. The trial court relied on the recreational use exception of the tort claims act, K.S.A. 75-6104(o), and granted the County's motion for partial summary judgment on the ordinary negligence claim.

We find no error and affirm.

## Facts

Roderick E. Gonzales, age 21, drowned at the Lake Shawnee swimming beach on July 8, 1986. Augustine Gonzales, his father, as the administrator of the estate of the deceased, and Augustine and Dolores Gonzales, the decedent's parents, filed a survival and wrongful death action against the Board of County Commissioners of Shawnee County, Kansas.

After certain amendments, the petition alleged that Roderick Gonzales was a customer and business invitee of the swimming beach. He paid an admission fee to use the facility and purchased a soft drink at a concession stand located inside the facility. The concession stand is owned and operated by the County. The deceased was wading in approximately four feet of water, which was designated "shallow water," when he unexpectedly stepped into an unmarked area of deep water and drowned. The alleged negligence of the County consists of acts and omissions which

demonstrate failure to comply with prevailing safety standards relating to inland water swimming beaches.

Lake Shawnee Park is owned and maintained by the County for public park and recreational purposes. The swimming beach is located in Lake Shawnee Park and is operated by the County through the Shawnee County Parks and Recreation Department. The charging of an admission fee and operation of a concession stand at the swimming beach area limits somewhat the public access and distinguishes the area from most of the shoreline of Lake Shawnee. The swimming beach consists of a sand beach, a swimming area, a bathhouse, and adjacent grounds.

The swimming beach is open to the public seven days each week during specific hours between Memorial Day weekend and Labor Day weekend. The various recreational activities provided include swimming, sunbathing, wading, utilization of the water slide, and volleyball. During 1986, the County charged $1 for individuals 16 years of age or older and 60¢ for individuals between the ages of 3 and 15. No charge was made for children under 3 years of age. The County has offered use of the swimming beach either free of charge or at reduced rates to individuals and groups such as: Shawnee County Day Camps, Salvation Army, Shawnee County HARTS Program, Florence Crittenton Organization, YMCA Day Camps, and the Villages.

Shawnee County enclosed and designed this area for special use as a swimming beach and related activities in contrast to the other areas of Lake Shawnee where swimming is prohibited.

The County derives significant revenues from the swimming beach. However, the purpose of the swimming beach is to provide a recreational facility for the public, not for financial gain to the County. The swimming beach neither operates at a profit nor is it intended to do so.

### The Trial Court's Memorandum Opinion

The trial court granted the County's motion for partial summary judgment.

The dispositive issue was identified as:

"Whether the swimming beach at Lake Shawnee is 'public property intended or permitted to be used as a park, playground, or open area for recreational purposes . . . ,' pursuant to K.S.A. 75-6104(o) (Supp. 1988) and therefore

not liable for [the claims] presented in this lawsuit absent proof of gross and wanton negligence . . . ."

The trial court observed:

"[T]he Court accepts as true that Shawnee County has enclosed and designed this area at Lake Shawnee for special use as a swimming beach and related activities in contrast to the other areas of Lake Shawnee where swimming is prohibited. It charges an admission fee and operates a concession stand at the swimming beach, therefore deriving significant revenues from the swimming beach which limits somewhat the public access and distinguishes it from most of the shoreline at Lake Shawnee. The Court also must note that the county sells boat licenses, fishing licenses and rents shelter houses at Lake Shawnee which also generate revenue."

The trial court found that Lake Shawnee falls within the definition of "any public property intended or permitted to be used as a park" pursuant to K.S.A. 75-6104(o).

The parents argued that K.S.A. 75-6104(o) does not apply to wrongful death claims but only claims for injuries. Concluding that K.S.A. 75-6104(o) does apply to wrongful death claims, the trial court found that the Gonzaleses' interpretation would contravene the intent and purpose of the statute. The trial court reasoned that if the legislature had intended such a fine distinction, the legislature would have so provided. We agree with the trial court's rationale.

The claim based upon gross and wanton negligence was not before the trial court and does not present an issue in this appeal.

### The Recreational Use Exception—K.S.A. 75-6104(o)
### Immunity from Liability

The administrator and parents of Roderick E. Gonzales contend that K.S.A. 75-6104(o) does not apply to the facts of this case. They reason that K.S.A. 75-6104(o) does not provide the County with immunity because the County charges an admission fee and operates a concession stand. They also assert that the swimming beach is not within the K.S.A. 75-6104(o) characterization of "public property intended or permitted to be used as a park, playground or open area for recreational purposes."

Procedurally, the administrator and parents assert that a liberal reading of the record demonstrates that there has been no conclusive showing of Shawnee County's entitlement to immunity from liability for ordinary negligence under the provisions of

K.S.A. 75-6104(o). They contend the trial court, in granting the motion for partial summary judgment, ignored: (1) the status of Roderick E. Gonzales as a business invitee; (2) common-law principles of premises liability relating to swimming facilities; and (3) the Kansas Land and Water Recreational Areas Act, K.S.A. 58-3201 *et seq.* (Kansas Recreational Use Act).

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Patterson v. Brouhard,* 246 Kan. 700, 702, 792 P.2d 983 (1990).

A review of the record indicates that partial summary judgment was a procedurally proper vehicle for disposing of this issue by the trial court.

The tort claims act is open-ended. K.S.A. 75-6103(a). Governmental liability is the rule and immunity the exception. *Nichols v. U.S.D. No. 400,* 246 Kan. 93, 94, 785 P.2d 986 (1990).

"In Kansas, there is a duty imposed by law for operators of swimming areas, whether pools or lakes, to exercise reasonable care towards the users of those facilities." *Young v. Kansas State Park & Resources Authority,* 6 Kan. App. 2d 220, 223, 627 P.2d 384, *rev. denied* 229 Kan. 671 (1981).

Shawnee County may be liable for ordinary negligence unless insulated by a liability exception.

K.S.A. 75-6104 states in part:

"A governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from:

. . . .

"(o) any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

The argument that K.S.A. 75-6104(o) does not apply when revenues in the form of admittance fees and concessions are received is not persuasive.

We have stated: "The plain language of the statute [K.S.A. 75-6104(o)] makes it clear that immunity exists for any claim for

negligently caused injuries resulting from the *use* of public property intended [to be used as a park, playground, or open area] for recreational purposes." *Nichols,* 246 Kan. at 95. "Where a statute is plain and unambiguous, this court must give effect to the intention of the legislature as expressed rather than determine what the law should or should not be." *Nichols,* 246 Kan. at 95.

We rejected the argument that the recreational use exception applies only to unsupervised activity. K.S.A. 75-6104(o) contains no distinction between supervised and unsupervised activity. *Nichols,* 246 Kan. at 95.

Similarly, K.S.A. 75-6104(o) is silent regarding admission fees and other revenue generating activities. The statute makes no distinction between public property open to the public free of charge and public property which requires an admission fee for use. The attempt here to defeat governmental immunity based upon an admission fee/revenue generating activity distinction is unsuccessful. If any future liability for ordinary negligence is to be created by such a distinction, it must originate with the legislature.

*Bonewell v. City of Derby,* 236 Kan. 589, 693 P.2d 1179 (1984), 55 A.L.R. 4th 657, construed the recreational use exception, K.S.A. 75-6104(o). Carol Bonewell, the plaintiff, was injured while sliding into home plate during a softball game on a ball field owned by the City. The Derby Jaycees managed the softball league. Entry fees from the softball teams and fees for signboard advertising were collected. The concession stand at the ball park was operated by another person under contract with the City. We held both the City and the Jaycees were immune from tort liability pursuant to the recreational use exception.

### The Kansas Recreational Use Act—
### K.S.A. 58-3201 *et seq.*

The administrator and parents also contend that K.S.A. 58-3201 *et seq.* reflects a legislative intent not to confer governmental immunity from liability for ordinary negligence when fees are charged.

We do not agree with their contention.

K.S.A. 58-3201 *et seq.* was enacted in 1965. K.S.A. 58-3201 signals legislative intent: "The purpose of this act is to encourage

owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes."

K.S.A. 58-3204 states:

"Except as specifically recognized by or provided in K.S.A. 58-3206, an owner of land who either directly or indirectly invites or permits *without charge* any person to use such property for recreational purposes does not thereby: (a) Extend any assurance that the premises are safe for any purpose.

"(b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

"(c) Assume responsibility for or incur liability for any injury to person or property caused by an act of omission of such persons." (Emphasis added.)

This section was amended in 1988 to include distinctions between agricultural and nonagricultural land.

*Klepper v. City of Milford, Kansas,* 825 F.2d 1440 (10th Cir. 1987), is the only reported case construing the recreational use act.

The Tenth Circuit in *Klepper* noted that the recreational use act uses verbatim language from the model legislation recommended by the Council of State Governments with one exception. Although the preamble to the model legislation referred to *private* landowners, the Kansas act deleted "private" and simply protected "owners of land." 825 F.2d at 1444. *Klepper* did not involve an admission fee fact situation. The recreational use act was applied to insulate the City of Milford from liability for ordinary negligence. 825 F.2d at 1447-48.

The recreational use act was adopted prior to the tort claims act. The best constructive interpretation of legislative intent is that the two acts operate independently from each other. Nothing in the recreational use act shall be construed to create a duty of care or ground for liability. K.S.A. 58-3207.

The recreational use exception in K.S.A. 75-6104(o) is to be viewed as an independent shield of liability for governmental entities. The recreational use act does not prevent K.S.A. 75-6104(o) from granting governmental immunity for ordinary negligence when fees are charged.

The administrator and parents also advance the view that the swimming beach is not "public property intended or permitted to be used as a park . . . for recreational purposes." They con-

tend that a swimming beach is not a park. They reason that if the legislature had intended K.S.A. 75-6104(o) to include swimming facilities, it would have either specifically mentioned swimming facilities in the statute, or created a broad exception such as "recreational facility."

The argument advanced is not persuasive. We have determined that swimming facilities qualify as a "park purpose." See *Kinney v. Kansas Fish & Game Comm'n,* 238 Kan. 375, 381, 710 P.2d 1290 (1985). In *Smith v. Fuest,* 125 Kan. 341, 344-45, 263 Pac. 1069 (1928), we concluded that a swimming pool is a proper park improvement.

In *Bonewell,* 236 Kan. at 591-92, the injured softball player contended that the softball diamond was not a "public property intended or permitted to be used as a park, playground or open area for recreational purposes." We responded:

"We look first to the character of Riley Field. It is owned by the City, and is within the confines of Riley Park, a public park. The Field's use for softball games is obviously a recreational purpose. . . . The ball diamond in Riley Park was obviously built with the intent that it be used by the public as a ball field, which is a recreational purpose. We find no merit to this argument." 236 Kan. at 592.

In the case at bar, the swimming beach is owned by the County and is located within the confines of Lake Shawnee Park. The swimming beach is intended to be used by the public for recreational purposes. Under the *Bonewell* rationale, the swimming beach is "public property intended or permitted to be used as a park . . . for recreational purposes."

K.S.A. 75-6104(o) provides Shawnee County with immunity from liability for ordinary negligence for injuries to individuals who pay an admission fee to use the enclosed swimming beach.

### An Action for Wrongful Death

The parents contend that K.S.A. 75-6104(o) does not apply to actions for wrongful death. They argue that K.S.A. 75-6104(o) is applicable only to any claim for "injuries" and that a wrongful death action is an action for "damages," not for "injuries."

The parents look to *Interstate Business Men's Accd't Assoc. v. Dunn,* 178 Ky. 193, Syl. ¶ 2, 198 S.W. 727 (1917) ("The word 'injure' is not a technical word. It has a popular and well understood meaning and is customarily confined to injuries that are

not fatal."), and *Kromhout v. Commonwealth*, 398 Mass. 687, 690, 500 N.E.2d 789 (1986) (wrongful death action against the State arising out of a car accident caused by a defect in a state highway; "'ordinarily the Legislature does not intend that the word "injury" should include death.'")

A contrary view is expressed in *Sterns v. M.F.A. Mutual Insurance Company*, 401 S.W.2d 510, 520-21 (Mo. App. 1966). The Missouri Court of Appeals held that "injuries" is a generic term which includes two classes of injuries: fatal injuries and nonfatal injuries. The plaintiffs in *Sterns* sought damages for the death of their child under an uninsured motorist provision in an automobile insurance policy. The parents in the instant case seek to distinguish *Sterns* by observing that a policy of insurance is ordinarily construed liberally in favor of the insured. The parents contend that a liberal tort claims act interpretation is inappropriate because exceptions to liability should be interpreted strictly.

We have previously affirmed application of K.S.A. 75-6104(o) in a wrongful death action. *Lee v. City of Fort Scott*, 238 Kan. 421, 710 P.2d 689 (1985). In *Lee*, Frank James Lee, Jr., died from injuries suffered when his motorcycle collided with a steel cable strung between trees around a municipal golf course in Gunn Park in the City of Fort Scott. Lee's parents filed a wrongful death action against the City of Fort Scott. The trial court granted summary judgment to the City finding, as a matter of law, that Lee's parents failed to produce any evidence of gross and wanton negligence as required by K.S.A. 75-6104(o). We did not specifically decide whether "injuries" included damages for wrongful death because the issue was not raised. We applied the immunity of K.S.A. 75-6104(o) to injuries resulting in death. The City of Fort Scott had no liability.

In *Frost v. Hardin*, 1 Kan. App. 2d 464, Syl. ¶ 3, 571 P.2d 11 (1977), the Court of Appeals stated: "A wrongful death action under Kansas law is not a true 'joint' action, since all who are *injured* need not join and defenses good against one plaintiff do not bar recovery by others." (Emphasis added.) The "injured" were the decedent's widow and two children. On review, we affirmed and adopted the opinion of the Court of Appeals as written. *Frost v. Hardin*, 224 Kan. 12, 577 P.2d 1172 (1978).

We have obliquely approved the use of the term "injured" in a wrongful death action. We now do so directly.

K.S.A. 75-6104(o) provides Shawnee County with immunity from liability for ordinary negligence in this action for wrongful death. We would graft an illogical imbalance onto the statute were we to hold otherwise. It is our view that the legislature did not intend K.S.A. 75-6104(o) to impose liability on a governmental entity if death occurs but grant immunity for any injury, regardless of severity, not resulting in death.

The trial court did not err in granting the County's motion for partial summary judgment on the claim for ordinary negligence.

Affirmed.