No. 79,524

LARRY JACKSON, JR., a minor by and through his Mother, Natural Guardian, and Next Friend VIRGIE ESSIEN and VIRGIE ESSIEN, Individually, *Appellants*, v. UNIFIED SCHOOL DISTRICT 259, SEDGWICK COUNTY, KANSAS, *Appellee.*

(995 P.2d 844)

320

Opinion filed January 28, 2000.

*Kelly W. Johnston*, of Johnston Law Offices, P.A., of Wichita, argued the cause and was on the brief for appellants.

*Robert G. Martin*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, argued the cause and was on the briefs for appellee.

*Steven Hornbaker*, of Harper, Hornbaker, Altenhofen & Opat, of Junction City, was on the brief for *amicus curiae* Kansas Trial Lawyers Association.

*David C. Cunningham*, of Topeka, was on the brief for *amicus curiae* Kansas Association of School Boards.

The opinion of the court was delivered by

ABBOTT, J.: Larry Jackson, Jr., a minor, by and through his mother, natural guardian, and next friend Virgie Essien, and Virgie Essien, individually, (plaintiffs) appeal from a summary judgment entered against them and in favor of Unified School District 259, Sedgwick County, Kansas (defendant). The plaintiffs sought damages for a compound fracture of both bones in the right forearm. The injury occurred in a required physical education class when Jackson fell to the floor after attempting to dunk a basketball by launching himself from a springboard. The district court found the defendant immune from liability under the provisions of the Kansas Tort Claims Act (KTCA) K.S.A. 75-6101 *et seq.*, pursuant to K.S.A. 75-6104(o). The plaintiffs contend the district court erred in granting summary judgment because (1) there were unresolved issues of fact before the court, and (2) the defendant had a "duty" to the school children which prevents it from raising immunity as a defense.

Jackson participated in a required physical education class at the Hamilton Middle School in Wichita, Kansas. During class, one of the students asked the instructors if the students could use a large wooden springboard to catapult the students into the air so that they could touch the rim of the basketball goal or dunk a basketball. (The record is confusing as to which act the plaintiff was doing

when he was injured, but it is immaterial to this opinion.) When the plaintiff attempted this act, he lost control of his body and fell to the floor, causing compound fractures of both bones in his right forearm.

The plaintiffs filed suit against the defendant, alleging that the defendant's negligent conduct caused the plaintiff's injuries. The defendant moved for summary judgment, arguing that the "recreational use" provision of the KTCA provides qualified immunity for negligent acts of this nature, so long as there is no showing of gross or wanton conduct. The district court granted the defendant's motion for summary judgment. The plaintiffs appealed the district court's ruling. The Kansas Court of Appeals affirmed the decision of the district court in *Jackson v. U.S.D. 259*, 26 Kan. App. 2d 111, 979 P.2d 151 (1999). This court granted review.

The standard of review for a motion for summary judgment is well established. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. K.S.A. 60-256(c). On appeal, we apply the same rules, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. *Saliba v. Union Pacific R.R. Co.*, 264 Kan. 128, 131-32, 955 P.2d 1189 (1998). That part of the appeal involving the interpretation of a statute receives unlimited review. *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993). See also *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991) (appellate courts have unlimited review when examining a district court's conclusions of law).

Under the KTCA, governmental liability is the rule and immunity is the exception. *Lanning v. Anderson*, 22 Kan. App. 2d 474, 478, 921 P.2d 813, *rev. denied* 260 Kan. 994 (1996). In order to avoid liability, the governmental entity has the burden of proving that it falls within one of the enumerated exceptions found in K.S.A. 75-6104. *Barber v. Williams*, 244 Kan. 318, 320, 767 P.2d 1284 (1989). The KTCA is applicable to school districts and their

employees. K.S.A. 75-6102(b), (c), (d); *Greider v. Shawnee Mission Unified School Dist. 512*, 710 F. Supp. 296, 298 (D. Kan. 1989).

K.S.A. 75-6104(o) provides a governmental entity with immunity for

"any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury."

The plaintiffs do not contend the defendant was "guilty of gross and wanton negligence proximately causing such injury."

The plaintiffs argue that the gymnasium is not "public property" because access to the gym is limited. Limited access to governmental property does not mean that the property is not "public." The government can restrict the times in which public property is used. The government can restrict the way in which public property is used. Governmental entities often charge a fee for entry onto public property. Sometimes admission is altogether denied if another group has already reserved the use of the public property. Even though the government restricts property in these ways, it remains "public property." See *Gonzales v. Board of Shawnee County Comm'rs*, 247 Kan. 423, 429-30, 799 P.2d 491 (1990) (public swimming beach operators can charge admission fees yet the beach remains "public" for the purposes of K.S.A. 75-6104[o]); *Bonewell v. City of Derby*, 236 Kan. 589, 592, 693 P.2d 1179 (1984) (baseball field is "public" for the purposes of K.S.A. 75-6104[o] even though at times the general "public is excluded from the field while games are in progress"); and *Gruhin v. City of Overland Park*, 17 Kan. App 2d 388, 390-91, 836 P.2d 1222 (1992) (restrictions such as a user's fee do not prevent a governmental entity from asserting immunity pursuant to K.S.A. 75-6104[o]). We hold that the school gymnasium is "public property" for the purposes of K.S.A. 75-6104(o).

The plaintiffs argue that the gymnasium is not a "park" or a "playground" or an "open area." The plaintiffs contend that an "open area" is limited to places which are out of doors. The plaintiffs assert that the legislature intended for "open area" to be limited to outdoor areas. The plaintiffs stated in their brief:

"[A] construction of 'park, playground or open area' that would apply only to outdoor areas would make sense from a public policy standpoint. In the original drafting of the KTCA, the legislature must have been concerned with protecting governmental entities from lawsuits arising out of the use of outdoor parks which contain large tracts of green space that can be used for all kinds of recreational activities."

Kansas appellate courts have previously held that K.S.A. 75-6104(o) provides immunity from injuries which have occurred outdoors on a football practice field or a school track.

In *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 785 P.2d 986 (1990), the plaintiff was a high school student who was injured running from the football practice field to the school locker room. The plaintiff brought suit against the school district, alleging that the football coach was negligent in requiring the players to run to the locker room in the dark. The district court granted summary judgment for the defendant. This court affirmed the decision of the district court and held that the defendant was immune pursuant to K.S.A. 76-6104(o). School districts are not liable for injuries which are the result of ordinary negligence and which occur on or near a football playing field.

In *Lanning*, 22 Kan. App. 2d 474, the plaintiff was injured when he was hit by a discus thrown by a member of the track and field team. The injury occurred near a baseball field and an outdoor basketball court. A jury found the school district and the track and field coach liable for the plaintiff's injuries. The defendants filed a motion for judgment notwithstanding the verdict, a motion for a new trial, and a motion for reconsideration, all of which were denied by the trial court. On appeal, the defendants argued that the trial court erred when it refused to grant the motion for a directed verdict and that there was insufficient evidence for a finding of gross and wanton negligence. The plaintiff cross-appealed and argued that the recreational use exception found at K.S.A. 75-6104(o) did not apply to the case and that the plaintiff should not have been limited to arguing gross and wanton negligence. The Court of Appeals held, *inter alia*, that K.S.A. 75-6104(o) applies to injuries which occur on a school playground. 22 Kan. App. 2d at 484-85.

In *Boaldin v. University of Kansas*, 242 Kan. 288, 747 P.2d 811 (1987), the plaintiff was injured while sledding down a hill on the campus of the University of Kansas. The defendant filed a motion for summary judgment, arguing that the recreational use provision of the KTCA provided them with immunity, which the district court granted. This court held that the sledding area on the campus was an area that was covered by the recreational use provision of the KTCA. 242 Kan. at 292.

It defies common sense to hold that K.S.A. 75-6104(o) provides immunity from injuries which occur on a football field, a baseball field, a track and field area, and a sledding area, but not on an indoor basketball court solely because it is indoors.

The plaintiffs do not provide any committee meeting notes or any other legislative documents which would support such an assumption. There is no indication that the legislature, in adopting K.S.A. 75-6104(o), intended to limit the meaning of "open area" to outdoor areas. Absent any legislative direction, we must interpret the words "open area" using their ordinary meaning. We hold that the school gymnasium qualifies as an "open area" for the purposes of K.S.A. 75-6104(o).

The plaintiffs worry that such a determination will broaden a school's immunity to the point that any injury that takes place in a library, lecture hall, or cafeteria will not be compensable because school districts will be able to use K.S.A. 75-6104(o) as a complete defense. Each case brought pursuant to the KTCA must be evaluated on a case-by-case basis. Our holding today does not broaden the meaning of "open area," as used in K.S.A. 75-6104(o), beyond that of a school gymnasium.

Finally, the plaintiffs argue that because there have been no cases which have applied K.S.A. 75-6104(o) to the inside of a school gymnasium, the statute must not apply to interior spaces. This argument is without merit. There must always be a "first case." For this specific issue, this case is one of first impression for this court. The fact that there have been no cases before the appellate courts of Kansas which have applied K.S.A. 75-6104(o) to the interior of a school does not prevent us from doing so now.

This does not end the statutory analysis in this case. An issue remains as to whether the gymnasium is property which is used for "recreational purposes."

The plaintiffs argue that the gymnasium is not "property intended or permitted to be used . . . for recreational purposes." In support of this argument, the plaintiffs note that the injury occurred during a mandatory class during the course of the regular school day. The plaintiffs further assert that the gymnasium was "not constructed and maintained for any purpose other than for education."

In order for a location to fall within the scope of K.S.A. 75-6104(o), the location must merely be "intended or permitted to be used . . . for recreational purposes." The injury need not be the result of "recreation."

In *Kayser v. Village of Warren*, 303 Ill. App. 3d 198, 707 N.E.2d 285 (1999), the Illinois Court of Appeals addressed this issue. In *Kayser*, the plaintiff was injured inside a community center while selling T-shirts during the annual Stagecoach Trail Festival. While noting that the activity in which the plaintiff was engaged was not particularly "recreational," the court held that the community center was intended to be used for recreational purposes and, therefore, the defendant was entitled to immunity under the Illinois Tort Claims Act. 303 Ill. App. 3d at 203-04.

The KTCA was introduced in the Senate as S.B. 76 on January 11, 1979, and referred to the Senate Judiciary Committee on January 15, 1979. S.B. 76 did not contain the current "recreational use" provision. A substitute for S.B. 76 was introduced on March 7, 1979. The substitute bill was the source of a significant amount of debate. The substitute for S.B. 76 did not contain the "recreational use" provision either. The Senate voted in favor of substitute for S.B. 76 on March 7, 1979, and the bill went to the House.

Substitute for S.B. 76 was introduced in the House on March 12, 1979 and was referred to the House Judiciary Committee on March 13, 1979. The House Judiciary Committee approved substitute for S.B. 76 on March 29, 1979, although amending the bill to include exceptions for "malfunction, destruction or unauthorized removal of any traffic or road sign" (now K.S.A. 75-6104 [h]);

"failure to make an inspection . . . of any property other than the property of the governmental entity" (now K.S.A. 75-6104[k]); "snow or ice conditions or other temporary or natural conditions on any public way or other public place" (now K.S.A. 75-6104[l]); "the plan or design for the construction of or an improvement to public property" (now K.S.A. 75-6104[m]); and "failure to provide . . . police or fire protection" (now K.S.A. 75-6104[n]).

On April 2, 1979, Representative Stites made a motion before the House to add the "recreational use" exception now found at K.S.A. 75-6104(o). There are no committee notes discussing the "recreational use" exception.

On April 2, 1979, the House passed the amended substitute for S.B. 76 (containing what is now K.S.A. 75-6104[o]) with 106 Yeas and 5 Nays. On April 3, 1979, the Senate concurred, voting 36 Yeas and 3 Nays. The KTCA was presented to the governor on April 10, 1979, and approved on April 19, 1979.

Only two other states have statutes similar to the "recreational use" exception found in Kansas: South Carolina and Illinois. The South Carolina Torts Claims Act states that the governmental entity is not liable for a loss resulting from:

"maintenance, security, or supervision of any public property, intended or permitted to be used as a park, playground, or open area for recreational purposes, unless the defect or condition causing a loss is not corrected by the particular governmental entity responsible for maintenance, security, or supervision within a reasonable time after actual notice of the defect or condition." Code of Laws of S.C. 1976, § 15-78-60(16) (1999 Supp.).

The South Carolina exception is limited to defects in the condition of the property, but also covers security and supervision. The Kansas statute is not limited to injuries which are the result of a defective condition. The South Carolina statute is much more narrow than the one passed by the Kansas Legislature.

In 1965, the Illinois legislature passed a statute which was remarkably similar to the one which currently exists in Kansas, although the Illinois statute also limited the immunity to defective property conditions. The statute was amended in 1986 to its present form which reads:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of *any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities,* unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.) Ill. Comp. Stat. ch. 745, 10/ 3-106 (1998).

Illinois has considered a number of cases construing this statute. In *Bubb v. Springfield School Dist.*, 167 Ill. 2d 372, 657 N.E.2d 887 (1995), the plaintiff was injured when her bicycle went off the sidewalk at her school. The plaintiff argued that the sidewalk was not being used for recreation when the injury occurred. The defendant argued, and the Illinois Supreme Court agreed, that the injury need not occur as the result of recreation but that the sidewalk merely be intended for recreational use. There was testimony that the school had painted "4-square" lines on the sidewalk, allowing students to play on the sidewalk during recess. The *Bubb* court stated that immunity "depends on the character of the property in question, not the activity performed at any given time" and affirmed the trial court's grant of the defendant's motion for summary judgment based on immunity under the Illinois Tort Claims Act.

In *Hanover Insurance Co. v. Bd. of Education*, 240 Ill. App. 3d 173, 608 N.E.2d 183 (1992), the plaintiff was injured while performing masonry work while on an elementary school playground. The plaintiff argued that the recreational use exception should not apply as he was not engaged in a recreational activity when he was injured. The Illinois Court of Appeals disagreed and held that the plaintiff's specific use of the property at the time of the injury is not a factor. The court noted that the plain wording of the statute only requires that the property be intended for recreational use, not that the injury occur as the result of a recreational activity.

In *Lewis v. Jasper Co. Comm. Unit Sch. Dist.*, 258 Ill. App. 3d 419, 629 N.E.2d 1227 (1994), the plaintiff was injured when he fell against a pumphouse which was located on the playground of a school. The plaintiff argued that he was not engaged in a recreational activity at the time of his accident. The court held that the

playground was intended to be used as a recreational facility and, therefore, the school district was immune pursuant to the Illinois Tort Claims Act.

See also *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 689 N.E.2d 1119 (1997) (noting that application of the recreational use exception to the Illinois Tort Claims Act does not depend on the plaintiff's activities at the time of the injury); *Wallace v. Metropolitan Pier and Expo. Auth.*, 302 Ill. App. 3d 573, 707 N.E.2d 140 (1998) (noting that a determination of immunity should be decided on a case-by-case basis and that the court should consider the character of the property and not how it was being used at the time of the accident); *Batson v. Pinckneyville Elem. Sch. Dist.*, 294 Ill. App. 3d 832, 690 N.E.2d 1077 (1998) (citing *Bubb* and noting that the court should consider whether recreational activities have taken place at the property in the past and not consider what type of activity the plaintiff was engaged in at the time of the accident); and *Dinelli v. County of Lake*, 294 Ill. App. 3d 876, 691 N.E.2d 394 (1998) (noting that immunity under the recreational use exception is not solely dependent on what activity the plaintiff is engaged in at the time of the injury).

Here, the issue is whether the property was intended or permitted to be used for recreational purposes. If so, the defendant is immune from liability for plaintiff's injuries. Illinois has a case that is instructive on that point.

In *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 666 N.E.2d 687 (1996), the plaintiff was a high school student who fell in a physical education class and was injured. The trial court dismissed the injured plaintiff's lawsuit based on the Illinois statute granting immunity. The Illinois Court of Appeals reviewed the case and remanded it to the trial court to determine the intended or permitted use of the school gymnasium. The Illinois statute is identical to the Kansas statute in all pertinent areas except it defined the area it applied to so as to include "buildings or other enclosed recreational facilities." 281 Ill. App. 3d at 242.

The issue in *Ozuk* is the same as that before us, *i.e.*, was the gymnasium "intended or permitted to be used for recreational purposes"?

Illinois, like Kansas, has several applicable general principles of law. The purpose of the immunity statute is to encourage the development and maintenance of parks, playgrounds, and other recreational areas. The type of activity performed on the property when the injury occurs is not significant. Immunity depends on the character of the property in question, *i.e.*, whether the property was "intended or permitted to be used for recreational purposes." *Bubb*, 167 Ill.2d at 379. That determination is made by considering whether the property has been used for recreational purposes in the past or whether recreation has been encouraged.

In *Ozuk*, the Illinois Court of Appeals stated:

"Recreation is defined as 'refreshment of the strength and spirits after toil: DIVERSION, PLAY.' Webster's Third New International Dictionary 1899 (1986). Play 'suggests an opposition to work; it implies activity, often strenuous, but emphasizes the absence of any aim other than amusement, diversion, or enjoyment.' (Emphasis omitted.) Webster's Third New International Dictionary 1737 (1986). In contrast, physical education is defined as 'education in methods designed to promote the development and care of the body and (usually) involving instruction in hygiene and systematic exercises and in various sports and games.' Webster's Third New International Dictionary 1706 (1986). Thus, compulsory physical education and recreation have different aims: whereas the former seeks to instruct, the latter aspires merely to amuse. Accordingly, *although some students may enjoy gym class, it cannot be said to be recreation*. (Emphasis added.)

"Because public property may have more than one intended use (*Bubb*, 167 Ill.2d at 383) however, the fact that the gymnasium was used for physical education is not dispositive of whether section 3-106 immunity applies. If the school gymnasium was encouraged, intended, or permitted to be used for recess, extracurricular events, or other recreational, noncompulsory activities, then section 3-106 would apply, *provided that the recreational use was more than incidental*. See *Bubb*, 167 Ill.2d at 382. Because those facts were not developed in the circuit court, we would have to speculate to determine the issue. Accordingly, remand is appropriate for the limited purpose of developing facts related to the intended or permitted use of the gymnasium." *Ozuk*, 281 Ill. App. 3d at 243-44.

We do not deem it significant that the planned activities had been completed when plaintiff was injured. The class was required and plaintiff was there for a designated period of time. Whether the instructors determined how the time would be used or permitted the students to suggest activities is of no significance. The significant factor is that it was a required educational class.

We believe *Ozuk* to be a well-reasoned case and adopt its holding.

Finally, the plaintiffs argue that the immunity provisions of the KTCA do not apply in this case as the defendant had assumed a duty or had a duty under the common law to supervise school children in a non-negligent manner. The plaintiffs cite a number of cases in support of this argument; however, they all concern the "discretionary function" exception and do not address the "recreational use" exception.

The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community. In the case of an indoor gymnasium, the public benefits from having a place to participate in recreational activities when the weather outside is wet or cold.

There is no consideration of ordinary negligence in a case in which the defendant asserts that it is immune pursuant to K.S.A. 75-6104(o), and, therefore, no consideration of duty or breach. K.S.A. 75-6104(o) is a complete defense to actions where the plaintiff alleges only ordinary negligence. See *Gonzales*, 247 Kan. at 429 (the recreational use exception found in the KTCA is to be viewed as an independent shield of liability for governmental entities); *Nichols*, 246 Kan. at 95 (immunity exists for any negligently caused injuries resulting from the use of public property intended to be used as a park, playground, or open area for recreational purposes, pursuant to K.S.A. 75-6104[o]); *Boaldin*, 242 Kan. at 292-93 (school districts cannot be held liable for injuries which are the result of ordinary negligence where K.S.A. 75-6104[o] applies); *Willard v. City of Kansas City*, 235 Kan. 655, 660, 681 P.2d 1067 (1984) (mere negligence is insufficient to establish a basis for lia-

bility when a defendant asserts immunity pursuant to K.S.A. 75-6104[o]); and *Lanning*, 22 Kan. App. 2d at 484 (the exception found at K.S.A. 75-6104[o] removes a school district from the standard of ordinary care). Qualified immunity, as found in K.S.A. 75-6104(o), means that the defendant is immune, regardless of any common-law duty, absent a showing of gross or wanton negligence.

*Amicus curiae* for the Kansas Trial Lawyers Association contends that the recreational use provision was never intended by the legislature to apply to supervised recreational activities and, therefore, K.S.A. 75-6104(o) cannot be used in this case to provide immunity for the defendant. *Amicus curiae* acknowledges that this court in *Nichols* spoke to this very issue but argues that the facts of *Nichols* do not support the precedent which was the result of that decision. *Amicus curiae* argues that the *Nichols* case "involved a defective or artificial condition of the premises and really had nothing to do with negligent supervision." In other words, *amicus curiae* argues that the language in *Nichols*, which addresses supervisory negligence, is merely dicta.

In *Nichols*, this court stated:

"Nichols' argument that governmental immunity applies only to an unsupervised activity is without merit. The plain language of the statute makes it clear that immunity exists for any claim for negligently caused injuries resulting from the *use* of public property intended for recreational purposes. Nowhere in the statute does the language distinguish between activities which are supervised or unsupervised. . . . Nichols' attempt to defeat governmental immunity based upon the distinction between supervised and unsupervised activities is erroneous."

". . . .

" . . . If the legislature had intended to limit immunity to those situations in which an injury on public property, used for recreational purposes, was caused by conditions on the premises, it would have expressly so stated." 246 Kan. at 95-97.

*Amicus curiae* Kansas Trial Lawyer's Association's assertion that the legislature did not intend for the recreational use provision of the KTCA to apply to injuries which are the result of negligent supervision is unsupported. The *amicus curiae* does not provide any legislative research in support of its position. The clear and unambiguous language of K.S.A. 75-6104(o) provides that injuries, which are the result of ordinary negligence, whether supervised or

the result of the condition of the land, cannot be the basis of a suit against a governmental entity because of the statutory immunity provided by that portion of the act.

The decision of the Court of Appeals affirming the district court is reversed. The judgment of the district court is reversed and the case is remanded to the district court for a factual determination of whether the school gymnasium is intended or permitted to be used for recreational purposes.

LOCKETT, J., concurring and dissenting: I agree with the majority's determination that an injury occurring to a student in a school gymnasium during a required physical education class is within the purview of K.S.A. 75-6104(o), which provides a governmental entity with immunity for any claim for injuries resulting from the use of any public property intended or permitted to be used as a park, playground, or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury.

The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the benefit of the public without fear that they will be unable to fund them because of the high cost of litigation.

In a case in which the defendant is immune from ordinary negligence under K.S.A. 75-6104(o), a governmental entity has no duty and is not liable for a breach of duty unless the plaintiff alleges gross and wanton negligence. Under K.S.A. 75-6104(o), if a school gymnasium is used for recess, extracurricular events, or other recreational, noncompulsory activities, K.S.A. 75-6104(o) applies, provided that the recreational use was more than incidental.

For support of this determination the majority cites several Illinois cases. In *Hanover Insurance Co. v. Bd. of Education*, 240 Ill. App. 3d 173, 608 N.E.2d 183 (1992), the plaintiff was injured while performing masonry work while on an elementary school playground. The plaintiff argued that the recreational use exception to liability should not apply as he was not engaged in a recreational

activity when he was injured. The Illinois Court of Appeals disagreed and held that the plaintiff's specific use of the property at the time of the injury is not a factor. The court noted that the plain wording of the statute only requires that the property be intended for recreational use, not that the injury occur as the result of a recreational activity.

In *Lewis v. Jasper Co. Comm. Unit Sch. Dist.*, 258 Ill. App. 3d 419, 629 N.E.2d 1227 (1994), the plaintiff was injured when he fell against a pumphouse which was located on the playground of a school. The plaintiff argued that the school district was not immune from liability because he was not engaged in a recreational activity at the time of the accident. The court held that the playground was intended to be used as a recreational facility and, therefore, the school district was immune pursuant to the Illinois Tort Claims Act.

See also *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 689 N.E.2d 1119 (1997) (noting that application of the recreational use exception to the Illinois Tort Claims Act does not depend on the plaintiff's activities at the time of the injury); *Wallace v. Metropolitan Pier and Expo. Auth.*, 302 Ill. App. 3d 573, 707 N.E.2d 140 (1998) (noting that a determination of immunity should be decided on a case-by-case basis and that the court should consider the character of the property and not how it was being used at the time of the accident); *Batson v. Pinckneyville Elem. Sch. Dist.*, 294 Ill. App. 3d 832, 690 N.E.2d 1077 (1998) (noting that the court should consider whether recreational activities have taken place at the property in the past and not consider what type of activity the plaintiff was engaged in at the time of the accident); and *Dinelli v. County of Lake*, 294 Ill. App. 3d 876, 691 N.E.2d 394 (1998) (noting that immunity under the recreational use exception is not solely dependent on what activity the plaintiff is engaged in at the time of the injury).

After referring to three Illinois cases for support of this determination, the majority states that the issue is whether the property was intended or permitted to be used for recreational purposes. If so, the defendant is immune from liability for plaintiff's injuries.

The majority then observes that Illinois, like Kansas, has several applicable general principles of law. It states that the purpose of the immunity statute is to encourage the development and maintenance of parks, playgrounds, and other recreational areas. It concludes that the type of activity performed on the property when the injury occurs is not significant. Immunity depends on the character of the property in question, *i.e.*, whether the property was "intended or permitted to be used for recreational purposes" *Bubb v. Springfield School District*, 167 Ill. 2d 372, 379, 657 N.E.2d 887 (1995). That determination is made by considering whether the property has been used for recreational purposes in the past or whether recreation has been encouraged.

I disagree with the majority's determination that immunity under K.S.A. 75- 6104(o) depends solely on the character of the property in question and not on the activity performed at any given time and the majority's conclusion that the plain wording of K.S.A. 75-6104(o) requires only that the property be intended or permitted to be used for recreational purposes, not that the injury occur as the result of a recreational activity.

Under the majority's reasoning, the Kansas Legislature intended that an electrician injured in a school gymnasium during repair of faulty wiring and an electrician injured during repair work in a classroom would subject the school to separate theories of liability. When repairing faulty wiring in an empty gym, the majority would apply the immunity stated in K.S.A. 75-6104(o). While repairing faulty wiring in an empty classroom, K.S.A. 75-6104(o) would not apply. Like the hypothetical electrician, individuals attending graduations, school plays, and pancake suppers held in the school gymnasium would be subject to the recreational activity exception of K.S.A. 75-6104(o).

I believe that the immunity under K.S.A. 75-6104(o) depends upon the character of the property and the activity performed at the given time.

ALLEGRUCCI, J., joins in the foregoing concurring and dissenting opinion.