NOT DESIGNATED FOR PUBLICATION

No. 117,428

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KELLY MUXLOW,
*Appellant*,

v.

CITY OF TOPEKA,
*Appellee*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed June 15, 2018. Affirmed.

*Robert E. Keeshan*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, for appellant.

*Nicholas H. Jefferson*, assistant city attorney, for appellee.

Before LEBEN, P.J., GARDNER, J., and BURGESS, S.J.

PER CURIAM: Kelly Muxlow was injured when she fell into an unmarked culvert with no guardrails while walking through the grassy area between a Topeka city park and the street beside it. She sued the City of Topeka to recover for her injuries.

The City moved for summary judgment, claiming immunity from liability under the Kansas Tort Claims Act. While the Act generally allows tort suits against state and local governments to proceed, there's an exception for recreational use. Under that exception, a two-part analysis applies. The government is generally immune from claims for injuries resulting from the use of public property intended or permitted to be used as a

park, playground, or open area for recreational purposes. But there's no immunity if the governmental entity committed the highest level of negligence, what's called gross and wanton negligence.

The district court found that the recreational-use exception applied because the place where Muxlow fell, which is adjacent to a park, was permitted to be used for recreational purposes. The court separately concluded that Muxlow had not provided sufficient evidence to show gross and wanton negligence by the City. Based on these conclusions, the district court granted the City's motion.

On appeal, Muxlow argues that summary judgment wasn't appropriate for two reasons: First, that the place where she fell wasn't a recreational area, and second, that there was evidence that the City acted with gross and wanton negligence. But neither party disputes that the area was public property permitted to be used for recreational purposes—such as jogging and walking dogs. And gross and wanton negligence requires some evidence that the City knew of the danger the culvert presented, but Muxlow has not presented any evidence that the City knew of any danger. Thus, the district court correctly held that summary judgment was appropriate because the City was immune from Muxlow's claim under the recreational-use exception. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Kelly Muxlow took her dogs out for a walk one evening in June 2013 near the Governor's mansion in Topeka, Kansas. Shortly before sundown, Muxlow reached an area along Fairlawn Road that didn't have a sidewalk, so she walked through a grassy area that sits between the road and MacLennan Park. While crossing through, she saw a fox approach. Muxlow picked up one of her dogs and started backing up—she soon fell

2

into a 4-foot deep unmarked concrete culvert that sits in the grassy area. There were no guardrails around the culvert.

Muxlow's fall resulted in cuts and bruising to her face, as well as a heel fracture that required two surgeries. The City placed temporary barricades around the culvert two days after Muxlow's fall, and a few months later it installed metal guardrails.

Muxlow sued the City in June 2015, alleging that the City was negligent for failing to put barriers or signs around the culvert. The City of Topeka argued that the culvert was installed in the 1960's by the State of Kansas, so it wasn't responsible for Muxlow's injuries. Muxlow tried to join the State of Kansas, the Kansas Department of Transportation, and the Kansas Secretary of Transportation to her lawsuit. But Muxlow brought her claims against the additional defendants outside of the two-year statute of limitations, so the district court granted their motion to dismiss them from the suit.

After discovery (the process in which parties to litigation can learn the facts by exchanging information and deposing witnesses), the City moved for summary judgment. One basis for the motion was recreational-use immunity under the Kansas Tort Claims Act.

After hearing oral arguments on the City's motion, the district court issued a written decision granting the City's motion and entering judgment in its favor. The district court found that one issue was dispositive in the case—that the City of Topeka was immune from suit under the Kansas Tort Claims Act.

Muxlow then appealed to our court. We too have heard oral argument from the parties. We have also reviewed both their filings in the district court and briefs filed on appeal.

ANALYSIS

On appeal, Muxlow argues that the City wasn't entitled to recreational-use immunity because the place where Muxlow fell wasn't a recreational area and there was some evidence that the City acted with gross and wanton negligence. Before we get into Muxlow's arguments, we must first review a bit of procedure.

After parties to a dispute have had a chance to discover evidence, but before their case goes to trial, a party may submit a motion to the trial court seeking summary judgment. K.S.A. 2017 Supp. 60-256(a). The party seeking summary judgment must show, based on both parties' evidence, that there is no dispute as to any significant fact and that they are entitled to judgment as a matter of law. In other words, the moving party must show that there's nothing for a jury or a trial judge sitting as fact-finder to decide that would make any difference to the outcome of the case. See *Armstrong v. Bromley Quarry & Asphalt, Inc.*, 305 Kan. 16, 24, 378 P.3d 1090 (2016).

The party opposing summary judgment must point to evidence calling into question some significant fact—if they do so, summary judgment must be denied so a fact-finder can resolve the dispute. When ruling on a summary-judgment motion, the district court must view the evidence in the light most favorable to the party opposing the motion. On appeal from the grant of summary judgment, we apply the same standards the trial court applied. *Fawcett v. Oil Producers, Inc. of Kansas*, 302 Kan. 350, 358-59, 352 P.3d 1032 (2015).

Because entry of summary judgment amounts to a question of law—it entails the application of legal principles to uncontroverted facts—we owe no deference to the trial court's decision and our review is unlimited. Resolving the summary-judgment issue in this case also involves the interpretation of a statute. That too is a question of law over

which we have unlimited review. *Poston v. U.S.D. No. 387*, 286 Kan. 809, 812, 189 P.3d 517 (2008).

We now turn to Muxlow's first argument on appeal—that the district court erred when it found that the City was entitled to recreational-use immunity at all.

Because at common law, the state or national government could not be sued, negligence claims against the government are allowed only as provided by statute. The Kansas Tort Claims Act provides that negligence claims usually may be brought against the government, but the Act also provides several exceptions to liability. K.S.A. 2017 Supp. 75-6103(a). Liability is the rule and immunity the exception, however, and the burden is on the State to show that it is immune from liability under one of the Act's exceptions. *Keiswetter v. State*, 304 Kan. 362, 366, 373 P.3d 803 (2016).

The exception to liability that's central in this case is known as the recreational-use exception. Under the Act, an individual can't bring a claim against the government "for injuries resulting from the use of any public property intended or permitted to be used as a park, playground or open area for recreational purposes, unless the governmental entity or an employee thereof is guilty of gross and wanton negligence proximately causing such injury." K.S.A. 2017 Supp. 75-6104(o). In other words, the government can't be sued for injuries on public property used for recreational purposes unless it acted with gross and wanton negligence.

The legislative purpose behind the recreational-use exception was explained by our Supreme Court in *Jackson v. U.S.D. 259*, 268 Kan. 319, 331, 995 P.2d 844 (2000):

> "The purpose of K.S.A. 75-6104(o) is to provide immunity to a governmental entity when it might normally be liable for damages which are the result of ordinary negligence. This encourages governmental entities to build recreational facilities for the

5

benefit of the public without fear that they will be unable to fund them because of the high cost of litigation. The benefit to the public is enormous. The public benefits from having facilities in which to play such recreational activities as basketball, softball, or football, often at a minimal cost and sometimes at no cost. The public benefits from having a place to meet with others in its community."

Because of the strength of the legislative purpose behind this exception, our Supreme Court has held that recreational-use immunity is to be broadly applied to accomplish that legislative purpose. *Poston*, 286 Kan. at 812; *Lane v. Atchison Heritage Conf. Center, Inc.*, 283 Kan. 439, 445, 153 P.3d 541 (2007); *Wilson v. Kansas State University*, 273 Kan. 584, 592, 44 P.3d 454 (2002).

Muxlow argues that it would be an absurd result if we considered the place where she fell to be a recreational area subject to the recreational-use exception. The area was not specifically designated or intended by the City to be used for recreational activities. But "[i]n order for a location to fall within the scope of K.S.A. 75-6104(o), the location must merely be 'intended or *permitted* to be used . . . for recreational purposes.'" (Emphasis added.) *Jackson*, 268 Kan. at 326; see *Lane*, 283 Kan. at 440 (finding recreational-use immunity barred suit by plaintiff injured after slipping on city conference center's loading dock); *Boaldin v. University of Kansas*, 242 Kan. 288, 291, 747 P.2d 811 (1987) (finding recreational-use immunity barred suit by plaintiff injured while sledding on hill at the University of Kansas).

The language of the statute is clear—to be entitled to recreational-use immunity, the public land need only be *permitted* to be used for recreational purposes. And here, the evidence shows—and neither party disputes—that the area was permitted to be used for recreational purposes:

- Muxlow testified that people walk dogs, jog, and walk there.

6

- As Muxlow's attorney recounted at the hearing on the summary-judgment motion, "There's Easter egg hunts, kid fitness, et cetera, which attract large numbers of people."

- Muxlow was injured while enjoying a recreational activity herself—walking her dogs.

- The grassy area where Muxlow was injured runs along the edge of MacLennan Park. See *Lane*, 283 Kan. at 446 (explaining that an area "must be viewed collectively to determine whether it is used for recreational purposes."); *Dye v. Shawnee Mission School District*, No. 98,379, 2008 WL 2369847, at *2 (Kan. App. 2008) (unpublished opinion) ("Courts do not segregate parts of the property to determine whether the recreational use exception applies; instead, they examine the collective character of the property in question."). So you would expect people to use it to access the park, and its location next to the park underscores the testimony that people regularly used it to walk, jog, or to walk a dog there.

Muxlow argues that the City wasn't entitled to recreational-use immunity under the Act for three other reasons, none of which are persuasive. First, Muxlow argues that the area can't be considered part of MacLennan Park because it isn't "integral" to the park itself. Kansas appellate courts have extended recreational-use immunity to property *integral* to or near a recreational facility. See *Poston*, 286 Kan. at 817-19; *Wilson*, 273 Kan. at 590-92 (holding that the exception applies to restrooms located in a football stadium); *Nichols v. U.S.D. No. 400*, 246 Kan. 93, 95-97, 785 P.2d 986 (1990) (applying exception where plaintiff was injured in a grassy area near football field); *Dye*, 2008 WL 2369847, at *2-3. But the area itself is an open space permitted to be used for recreational purposes, so it is unnecessary to determine whether it is "integral" to the adjacent park. That the area was adjacent to the park merely reinforces the separate conclusion that the area between the park and the road was itself used recreationally.

Next, Muxlow argues that cities have a common-law duty to maintain safe streets and right-of-ways, and that the City of Topeka breached this duty by constructing an unmarked concrete culvert in that spot. Even assuming that the City owes this duty, it is still immune from claims arising from injuries that occur on public land that the government permits to be used for recreational purposes. K.S.A. 2017 Supp. 75-6104(o).

Last, Muxlow says the district court ignored several important facts when it granted summary judgment—that there are no comparable open culverts in Topeka, that the bulk of the culvert is in the City's right of way, and that an expert concluded in his report that the culvert "was akin to an open grave and that the growth of the neighborhood now compelled the use of safety features." But these facts, even if true, don't go to whether this space was public property permitted to be used for recreational purposes. See *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000) ("'The disputed question of fact which is immaterial to the issue does not preclude summary judgment.'").

So the district court correctly concluded that the recreational-use exception to liability applied here. That meant that the City was immune from claims of ordinary negligence. The City can only be liable here if Muxlow shows that the City's acts amounted to gross and wanton negligence. See K.S.A. 2017 Supp. 75-6104(o).

Normally, whether a party has been negligent (even grossly and wantonly so) is a factual question to be submitted to a jury, but summary judgment is proper if a plaintiff has presented no evidence of gross and wanton negligence. See, e.g., *Vaughn v. Murray*, 214 Kan. 456, 459, 521 P.2d 262 (1974); *Jackson v. City of Norwich*, 32 Kan. App. 2d 598, Syl. ¶ 3, 85 P.3d 1259 (2004). In response to a summary-judgment motion, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. K.S.A. 2017 Supp. 60-256(e)(2).

8

Gross and wanton negligence requires more than the mere carelessness of ordinary negligence but doesn't require a willful intent to injure. *Soto v. City of Bonner Springs*, 291 Kan. 73, 82, 238 P.3d 278 (2010). Wanton acts are those showing that the defendant realized the imminence of injury to others and still didn't take steps to prevent injury because of indifference to the ultimate outcome. Wanton conduct is established by the mental attitude of the wrongdoer rather than by the particular negligent acts. *Adamson v. Bicknell*, 295 Kan. 879, 890, 287 P.3d 274 (2012); *Soto*, 291 Kan. 73, Syl. ¶ 9; *Jackson*, 32 Kan. App. 2d at 601.

To amount to gross and wanton negligence under the Kansas Tort Claims Act, there must be some evidence that the government *knew* of the *danger* the condition presented and chose not to address it. See *Lee v. City of Fort Scott*, 238 Kan. 421, 425, 710 P.2d 689 (1985) (finding no evidence of gross and wanton negligence in case involving injury from steel cables strung between trees because there were no prior injuries to alert city to danger); *Jackson*, 32 Kan. App. 2d at 601 (affirming summary judgment in case where woman stepped into a depression around covered-water valve in park because there was no evidence the city realized the danger it presented); see also *Gruhin v. City of Overland Park*, 17 Kan. App. 2d 388, 392-93, 836 P.2d 1222 (1992) (finding that summary judgment was not proper because city knew of prior injury, so city had actual knowledge of the danger). That makes sense because it's the mental attitude of the wrongdoer that's at issue, not whether, as in ordinary negligence, a reasonable person would have realized there was a danger present.

Muxlow points on appeal to several facts to support her claim of gross and wanton negligence: (1) the minimal cost to install a guardrail around the culvert; (2) that many other culverts in the City had guardrails or were covered; (3) that an expert said that the culvert was roughly the same size as an open grave; and without warning signs or safety measures, it posed a serious hazard to pedestrians; and (4) Paul Muxlow's affidavit claiming that the City was grossly and wantonly negligent.

9

We have also reviewed the specific statements of uncontroverted fact, as supported by evidence, that were supplied by Muxlow on summary judgment to the district court. There is some testimony that city workers doing street sweeping or snow plowing might have noticed the culvert. And there was evidence that the City placed guard rails at some other culverts.

But none of this showed that the City knew that the culvert presented a danger. Since the time the culvert was first installed in the 1960's, no one alerted the City to any injuries involving the culvert. Although Muxlow's husband submitted an affidavit stating that he believed "an open culvert without covering or guard rails in an area frequented by [people] is gross and wanton negligence," a party opposing summary judgment must set forth *specific facts* showing that there is a genuine issue for trial—bare opinions or unsupported conclusions will not suffice. K.S.A. 2017 Supp. 60-256(e)(2); *RAMA Operating Co. v. Barker*, 47 Kan. App. 2d 1020, 1031, 286 P.3d 1138 (2012). Thus, Muxlow has failed to present any evidence that the City acted with gross and wanton negligence and summary judgment on this point was also proper. See *Lee*, 238 Kan. at 425; *Jackson*, 32 Kan. App. 2d at 601; *Winn v. City of Leawood*, No. 91,210, 2004 WL 835991, at *3 (Kan. App. 2004) (unpublished opinion) (affirming summary judgment for city when no evidence showed it knew of danger to children from disassembled backstop at city park even though parks officials knew children often climbed various objects in parks).

In sum, there is no evidence that the City's failure to place guardrails or warning signs rose to the level of gross and wanton negligence, and the area where Muxlow fell was public property permitted to be used for recreational purposes. So the district court correctly concluded that the City was immune from liability for Muxlow's injuries under the recreational-use exception of the Kansas Tort Claims Act as a matter of law.

We therefore affirm the district court's judgment.

10